**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

BENEFIT RESOURCE GROUP, INC., )
)
Plaintiff, )
)
vs. ) NO. 2:11-CV-64
)
WESTFIELD INSURANCE COMPANY, )
)
Defendant. )

**OPINION AND ORDER**

This matter is before the Court on: (1) Defendant's Motion for Summary Judgment, filed on October 15, 2012; and (2) Motion to Strike, filed by Plaintiff, on October 18, 2012. For the reasons set forth below, the motion for summary judgment is **GRANTED in part and DENIED in part**. To the extent the motion seeks dismissal of BRG's bad faith claim, the motion is **GRANTED**. It is **DENIED** in all other respects. The motion to strike is **DENIED**.

BACKGROUND

In February 2009, the building located at 1234 Mishawaka Avenue, South Bend, Indiana, ("subject property") suffered water damage. The subject property is next door to the main office of Plaintiff, Benefit Resource Group, Inc. ("BRG"). BRG's president, Shawn Conery had procured insurance for the subject property from

Defendant, Westfield Insurance Company ("Westfield"). Ultimately, Westfield denied coverage for the damage to the subject property. BRG disagreed with Westfield's decision and filed this action seeking to enforce its rights under the insurance contract. BRG has also brought a bad faith claim against Westfield regarding the handling and denial of the underlying insurance claim.

Westfield has filed the instant motion for summary judgment, arguing that BRG does not have standing to bring this lawsuit since the insurance policy was issued to Shawn Conery, not BRG. In addition, Westfield seeks judgment on the bad faith claim, arguing that the undisputed facts compel dismissal on its merits. Because Westfield filed its motion for summary judgment a day after the dispositive deadline had passed, BRG has filed a motion to strike Westfield's motion for summary judgment.

DISCUSSION

Motion to Strike

On August 3, 2012, Magistrate Judge Cherry issued an order, setting Sunday, October 14, 2012, as the dispositive motion deadline. (DE# 62). On October 15, 2012, Westfield filed its motion for summary judgment. On October 18, 2012, BRG filed this motion to strike, arguing Westfield's motion for summary judgment should be stricken as untimely.

"Pleadings that do not conform with the local rules may be

stricken at the discretion of the court." *Goltz v. University of Notre Dame du Lac*, 177 F.R.D. 638, 640 (N.D. Ind. 1997) (citing *Bell, Boyd & Lloyd v. Tapy*, 896 F.2d 1101, 1103 (7th Cir. 1990); *Pfeil v. Rogers*, 757 F.2d 850, 858 (7th Cir. 1985); *Graham v. Security Sav. & Loan*, 125 F.R.D. 687, 688-89 (N.D. Ind. 1989)). BRG is correct that Westfield was ordered to file its motion for summary judgment by October 14, 2012. And, filing on October 15, 2012, makes that motion for summary judgment late. In response, defense counsel states that she erroneously believed the deadline was October 15, 2012, because October 14 fell on a Sunday. (DE# 69, p. 4). In addition, counsel provides that she was hospitalized on October 12, 2012, for a serious medical condition that made it impossible for her to complete the motion for summary judgment by October 14, 2012. (Def. Ex. A).

Without belaboring the point, this Court finds that Westfield has provided good cause for its failure to timely file its motion for summary judgment and BRG has failed to show any resulting prejudice. In utilizing its discretion, the Court will not strike the motion for summary judgment as untimely.

Motion for Summary Judgment

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will

properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate.

Facts

This case centers around insurance coverage for water damage occurring at a building located at 1234 Mishawaka Avenue, South Bend, Indiana ("subject property") in February 2009. Shawn Conery and his father, Greg Conery, own S&G Properties, which is a real estate holding company. The Conerys also own Benefit Resource Group ("BRG"). Both BRG and S&G are Indiana corporations with two shareholders, Shawn Conery and his father, Greg Conery. (Scott Dec. ¶ 4, 5; Ex. B Shawn Conery Exam, pp. 3-4). At the time of the water damage, S&G owned the subject property. (Dec. Scott ¶4).

The subject property was largely unused at the time of the

water damage. (Dec. Scott, ¶ 5). The subject property was next door to Benefit Resource Group's ("BRG") main office. It was used by Shawn and Greg Conery's employees and by their other business, BRG, for storage and periodic overflow workspace. (Dec. Scott, ¶ 6; Ex. B. Shawn Conery Exam., pp. 6, 11-12). Even though BRG used the subject property, there was no lease between S&G and BRG for that property. Shawn Conery was the president of BRG. (Shawn Conery Exam, p. 5). Shawn is also the actual policyholder of the insurance policy at issue in this case. (Scott Dec. ¶ 8). But during the time in question, BRG was using the building and paying for the insurance premiums on it. (Scott Dec. ¶ 9).

On February 24, 2009, Shawn Conery entered the subject property and discovered water damage. (Shawn Conery Exam, p. 26). At this time, the subject property was insured under a commercial policy issued by Westfield Insurance Company to Shawn Conery, with a policy period beginning on February 14, 2009, and ending on February 14, 2010. (Ex. D). The named insured on the policy was Shawn Conery, with the named insured designated as an individual in the Declarations. (Ex. D). There was no named additional insured on the policy. (Ex. D).

On February 25, 2009, Shawn reported the loss to Westfield representative Richard Jones and Westfield began its investigation. (Ex. C). On March 5, 2009, Westfield contacted Richard Rupnow to inspect the property. (Rupnow Dep. p. 12). Rupnow inspected the

subject property on March 12, 2009, and his investigation was inconclusive. (Rupnow Dep. pp. 36-38). On April 19, 2009, Rupnow visited the subject property again, but he was still unable to determine the cause of the water damage. (Rupnow Dep. p. 44). Westfield never asked Rupnow to conduct any further work; however, defense counsel later hired Rupnow for purposes of this litigation. (Rupnow Dep. pp. 44-45).

From March 30, 2009 through March 17, 2010, Westfield and its attorney made various correspondence to Shawn requesting various documentation regarding the insurance claim. (Ex. F). Also, Shawn's examination under oath was completed on November 23, 2009, several months after Westfield's originally request was made.

Westfield retained Ron George to provide an opinion as to whether the provisions of the insurance contract may have been violated. On October 26, 2010, Ron George conducted an inspection of the subject property. (George Dep. p. 67). On January 14, 2011, Westfield received the findings of Ron George's inspection, which concluded that the building was left unoccupied for an excessive period of time, based upon the mold growth present at the property, and that the water pipes likely froze during one fo the freeze events. (Ex. I, pp. 21-22). Ron George later issued a supplemental report wherein he stated that the water damage was likely from a separated water pipe which was likely caused by freezing water or cold weather allowing the compression type pipe

joint in the kitchen cabinet to separate and flow water into the structure. (Ex. J. p. 38).

BRG had the property examined by a roofing contractor, Chris Horton. (Ex. 5). Horton examined the side the day after water was discovered and concluded the damage was caused by ice damming - a process of snow and ice melting on roof areas over warmer parts of the house, running down the roof and re-freezing. (Ex. 5, p. 2).

On January 31, 2011, Westfield sent Shawn Conery a letter denying his claim under the policy because the subject property had been unoccupied for a period exceeding fourteen (14) days prior to the water damage, during which time the water damage continued. (Ex. K.).

On January 18, 2011, BRG commenced this lawsuit.

BRG has standing to bring this action
because it is in privity with Shawn Conery

Westfield argues that this case should be dismissed because BRG does not have standing to enforce the insurance contract at issue. In Indiana, "only the parties to a contract, those in privity with the parties, and intended third-party beneficiaries under the contract may seek to enforce the contract." *Harold McComb & Son, Inc. v. JP Morgan Chase Bank, NA*, 892 N.E.2d 1255, 1258 (Ind. Ct. App. 2008). It is undisputed that BRG was not a party to the insurance contract at issue; it was between Shawn Conery and Westfield. Further, BRG does not claim to be a third-

party beneficiary of the insurance contract. What BRG does claim, is that it and Shawn Conery are in privity with one another, which allows BRG to enforce the contract against Westfield.

"Privity has been defined as 'mutual or successive relationships to the same right of property, or an identification of interest of one person with another as to represent the same legal right.'" *Mislenkov v. Accurate Metal Detinning, Inc.*, 743 N.E.2d 286, 289 (Ind. Ct. App. 2001)(quoting *Riehle v. Moore*, 601 N.E.2d 365, 371 (Ind. Ct. App. 1992). Here, BRG claims to have privity with Shawn Conery for a number of reasons. First, BRG is the operating entity that actually used the subject property. And, S&G is the real estate holding company that owns both the subject property and BRG's main office next door. Further, Shawn Conery is one of only two shareholders that owns both S&G and BRG. Shawn was also the president of BRG. And, while the insurance policy was issued in Shawn's name, BRG paid for the insurance. In sum, BRG posits that "the one who used the building and paid for its insurance, the one who owned it, and the one who insured it in his name, all three have 'a legally recognized interest in the same . . . piece of property." (DE# 72, p. 7).

Such a finding would not be novel in Indiana. In *Polisnky v. Violi*, the court held that the majority shareholders of a closely-held corporation stood in privity with the corporation itself. 803 N.E.2d 684 (Ind. Ct. App. 2004). As a result, the shareholders in

*Polinsky* were entitled to enforce the terms of a contract between the plaintiff and the corporation, thus compelling the plaintiff to arbitrate his claims. Id. at 688-89. The court noted that "for the purposes of providing a day in court on issues contested in litigation, however, there is no good reason why a closely held corporation and its owners should ordinarily be regarded as legally distinct." *Id.* at 687 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 59(3)).

Westfield attempts to distinguish *Polinsky* and argue it is inapplicable for two reasons. First, Westfield points out that the plaintiff in *Polinsky* alleged the employing corporation was the alter ego of its controlling shareholders. The court found that based on plaintiff's admission, he could not also argue that the shareholders did not stand in privity with the corporation. *Polinsky*, 803 N.E.2d at 687-88. Westfield state that it has never alleged BRG was the alter ego of Shawn Conery, or vice versa.

Second, Westfield argues that *Polinsky* did not deal with insurance contracts, which are very specific with respect as to whom is entitled to benefits under the policy. However, Westfield does not cite to any case law that would stand for such a proposition; that is, that insurance contracts should be treated different than other contracts. Instead, Westfield relies on *County Line Towing, Inc. v. The Cincinnati Insurance Co.*, 714 N.E.2d 285 (Ind. Ct. App. 1999. In *County Line Towing*, both the

-10-

corporation and the shareholder brought suit against the insurer. For reasons unexplained, the trial court found that the shareholder was not a named insured or in privity with the corporation. *Id.* at 295. Maybe this was because the actual named insured, County Line Towing was already a party to the case. Or, maybe it was because the contract was an insurance contract. However, the exact reasons are unknown. The appellate court in *County Line Towing* merely found that "[w]e cannot say the trial court incorrectly applied the law to the facts before it when it determined [the shareholder] could not personally maintain an action against Cincinnati on the grounds he was not a named insured or a party to the insurance contracts." *Id.*

Neither *Polinsky* nor *County Line Towing* sets a blanket rule regarding either treating insurance contracts differently than ordinary contracts or deeming majority shareholders of a closely-held corporation to be in privity with the corporation. Instead, these cases merely follow the basic premise of privity. They examine the relationship between the parties and determine if there are mutual interests.

In examining the record, this Court finds that BRG does, in fact, have a mutual relationship with Shawn Conery with regard to any right to recovery from the insurance contract on the subject property. Indeed, BRG's interests are so identical as to Shawn Conery's as to represent the same legal right. Not only does BRG

and Shawn Conery have identical interests, but BRG is maintaining this action for insurance proceeds, which is the same action Shawn Conery could have brought. Notably, Shawn Conery is not a party to this case; BRG is bringing this lawsuit in place of Shawn Conery. This Court agrees with BRG that "the one who used the building and paid for its insurance, the one who owned it, and the one who insured it in his name, all three have 'a legally recognized interest in the same . . . piece of property."

### There exists no genuine issue of material fact that would support a bad faith claim.

BRG alleges Westfield breached its duty of good faith and fair dealing. Indiana law recognizes that there is a legal duty implied in all insurance contracts that the insurer deal in good faith with its insured. The failure to comply with a duty to act in good faith is often called the tort of bad faith and was first recognized in *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515 (Ind. 1993). In *Erie*, the Indiana Supreme Court observed that:

> The obligation of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim.

Id. at 520.

Obviously, a cause of action will not arise every time an

insurance claim is denied. A good faith dispute about whether the insurer has a valid claim will not supply the grounds for recovery in tort for the breach of the obligation to exercise good faith. *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002). However, an insurer that denies liability knowing there is no rational, principled basis for doing so has breached its duty. *Id.* To prove bad faith, the plaintiff must establish, with clear and convincing evidence, that the insurer had knowledge that there was no legitimate basis for denying liability. *Id.*

BRG claims Westfield unfoundedly delayed and refused to pay policy proceeds. BRG's first complaint is that, after Rupnow could not determine the cause of the water loss, Westfield did not either cover the damage as an unexplained loss or work further with Rupnow to understand what happened. However, BRG fails to explain how that, in any way, shows bad faith on the part of Westfield. Indeed, when there is property loss due and the cause is unexplained, there remains a good faith dispute about whether there is a valid insurance claim. *Sadler v. Auto-Owners Ins. Co.*, 904 N.E.2d 665, 673 (Ind. Ct. App. 2009)(citations omitted)(noting the long standing rule in Indiana "that insurance companies may, in good faith, dispute claims.").

BRG also complains that it took Westfield too long to gather information and waited more than a year to engage a new expert. However, BRG again fails to cite to a single case explaining that

a prolonged investigation is sufficient to trigger a bad faith claim. This is not surprising as the seminal bad faith case in Indiana, *Erie,* stated, "the lack of diligent investigation alone is not sufficient to support an award." *Erie*, 622 N.E.2d at 520. Moreover, it appears most of the delay was attributable to BRG and Shawn Conery.

Finally, BRG complains that Westfield hired a second expert to examine whether "BRG's conduct fell under one of the policy exclusions," the expert failed to properly evaluate the evidence, and Westfield failed to independently evaluate their expert's conclusion. (DE# 72, p. 10). Despite these complaints, there is no showing that the second expert, Ronald George, was retained to act in bad faith or performed his expert report in bad faith. Nor is there any evidence that BRG engaged in bad faith in connection with retaining or relying on George's opinion. The fact that Mr. George may have not properly evaluated the evidence does not establish intentional wrongdoing on the part of Westfield. *See Colley v. Indiana Farmers Mut. Ins. Group*, 691 N.E.2d 1259, 1261 (Ind. Ct. App. 1998)(stating that poor judgment and negligence do not amount to bad faith). And, there is nothing wrong with fact that he may have been retained to determine if a policy exclusion applies. *See American Family Life Assurance Co. v. Russell*, 700 N.E.2d 1174, 1177 (Ind. Ct. App. 1998)(noting that insurers can limit liability in any manner not inconsistent with public policy

and an unambiguous exclusionary clause).

Ultimately, while an unfounded refusal to pay policy proceeds may be a breach of good faith, a good faith dispute of a claim is not. *See Hoosier Ins. Co. Inc. v. Mangino*, 419 N.E.2d 978, 987-88 (Ind. Ct. App. 1981)(an insurance company is not required to either pay or litigate at its peril). There has been nothing shown in this case more than a good faith dispute of an insurance claim. According, the bad faith claim is dismissed.

CONCLUSION

For the reasons set forth above, the motion for summary judgment is **GRANTED in part and DENIED in part**. To the extent the motion seeks dismissal of the bad faith claim, the motion is **GRANTED**. It is **DENIED** in all other respects. The motion to strike is **DENIED**.

DATED: April 26, 2013  /s/RUDY LOZANO, Judge
**United States District Court**